IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILLIE J. MANCELL,

    Plaintiff,

vs.                                                        Civ. No. 13-417 KG/SMV

SECRETARY OF THE ARMY,
JOHN M. McHUGH,

    Defendant.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Defendant's Motion for Summary Judgment and Defendant's Memorandum in Support of Motion for Summary Judgment (Doc. 37) (collectively, the Motion for Summary Judgment), filed August 6, 2014.  (Docs. 37 and 38). Plaintiff filed a response on September 15, 2014, and Defendant filed a reply on October 23, 2014.  (Docs. 47 and 52).  Having considered the Motion for Summary Judgment, the accompanying briefs, and the material evidence in the record, the Court grants the Motion for Summary Judgment.

A.  *Summary of Material Facts Viewed in the Light Most Favorable to Plaintiff*[1]

       This is a Title VII gender discrimination and retaliation lawsuit brought by a former lead security guard at White Sands Missile Range (WSMR) against Defendant Secretary of the Army, John M. McHugh.  Plaintiff contends that Defendant violated Title VII when he terminated Plaintiff's employment for failure to pass a physical exam during which she injured her knees.

---

[1] Unless otherwise noted, the parties do not dispute these facts.

*1. Army Regulation 190-56, Dated October 15, 2009*

Army Regulation 190-56 applies to WSMR security guards like Plaintiff.  As a condition of employment, Army Regulation 190-56 requires security guards to initially pass the Physical Ability Test (PAT) and then to continue to pass the PAT on an annual basis.  (Doc. 38-1) at 8-9 (Appendix B, B-2(a)(1) and (2)).  The PAT consists of a pushups test and a running test.  *Id*. at 12 (Appendix D, D-3(a)).  If an individual is physically unable to take the PAT, an "examining physician will make a note of that and refer the individual to the command or hiring authority for disposition." *Id*. at 10 (Appendix C, C-2(b)).

Army Regulation 190-56 specifically provides that current Department of the Army Civilian Police and Security Guard (DACP/SG) employees

> take an initial, diagnostic PAT within 30 days of being medically cleared and must pass the record PAT within one year from the date of their medical clearance, thereafter, annual physical ability testing will be required for all DACP/SG.  In order to meet the condition of employment standard, the individual tested must successfully pass the established standard for each of the elements of the PAT.  If the DACP/SG fails the record PAT, he/she will be required to pass the retest within 90 days.  If the DACP/SG fails the second PAT, management will contact [the Civilian Personnel Advisory Center] on options defined by applicable Federal and/or agency regulations.

*Id.* at 12 (Appendix D, D-1(b)(2)).  Army Regulation 190-56 further provides that security guards

> who are temporarily medically restricted from performing the functions of their job, to include taking the PAT, will be exempt from taking the PAT for the duration of the temporary medical restriction.  Once the temporary medical restriction has been lifted and the individual has been medically cleared to return to full duty, they will have 90 days to take the PAT.

*Id.* at 13 (Appendix D, D-6).

> 2. *Plaintiff's Relevant Employment History at WSMR*
>
>> a. *Plaintiff's Equal Employment Opportunity (EEO) Activities and Promotion to Lead Security Guard*

In 2005, Plaintiff began employment at WSMR as a security guard detailed to protect the Army's nuclear fast burst reactor (FBR). (Doc. 38-1) at 1, ¶ 4. In 2006, Plaintiff filed an EEO complaint at WSMR. *Id*. at 5, ¶ 22. Plaintiff's supervisor, Gary J. Juul, encouraged Plaintiff to file the EEO complaint and "provided her with assistance in gathering information and guidance regarding the procedures for filing her claim." *Id.*

In August 2008, Juul promoted Plaintiff to lead security guard. *Id.* at 2 and 5, ¶¶ 8 and 22. The job description for lead security guard indicated "that a prescribed level of physical proficiency must be maintained and demonstrated in order to perform assignments in an acceptable manner," and that a condition of employment was compliance with Army Regulation 190-56 and the Personnel Reliability Program. (Doc. 38-2) at 1-2. Plaintiff subsequently signed a document in December 2008 agreeing and acknowledging that a condition of her employment as a security guard was to successfully complete an annual PAT, and that failure to do so "serves as a basis for … removal." (Doc. 38-1) at 14.

In August 2009, Plaintiff spoke with an EEO official regarding (1) Juul's failure to reply to Plaintiff's response to a Memorandum of Instruction issued by Juul, and (2) an incorrect 2008 Annual Performance Appraisal. (Doc. 47-1) at 24. The EEO official noted that Plaintiff agreed to have him meet with Juul to "try to resolve the matter before pursuing a pre-complaint." *Id.*

>> b. *The 2010 and 2011 PATs*

In July 2009, Plaintiff underwent an annual fitness exam which was normal except for possible hearing loss necessitating an audiogram. (Doc. 38-1) at 3, ¶ 12. In November 2009, Plaintiff "was placed on administrative duties pending receipt of the results of an audiogram."

*Id.* Then, in January 2010, a Competent Medical Authority (CMA) noted that all of Plaintiff's medical issues had been resolved, and that she was "good to go" without any medical restrictions. (Doc. 38-2) at 4.

Plaintiff, nonetheless, did not pass the PAT running tests administered in February 2010 and April 2010. *Id.* at 5-6. Consequently, in June 2010, Juul proposed removing Plaintiff from her position for failure to pass the PAT. *Id.* at 7-9. Plaintiff responded to the proposed removal in July 2010. (Doc. 38-1) at 3, ¶ 16.

In September 2010, Donald Morrison, the deciding official, provided Plaintiff another opportunity to pass the PAT before acting on Juul's proposed removal. *Id.* at 3, ¶ 17. However, before the third PAT could be administered, Plaintiff was diagnosed with a hernia requiring surgery. *Id.* Moreover, in October 2010, the FBR security guards were realigned to another command so that Donald Knox became the new deciding official. *Id.* at 3-4, ¶ 17; (Doc. 38-4) at 1, ¶ 2.

In April 2011, Plaintiff's physician lifted her medical restrictions, but noted that Plaintiff needed three to four months before taking any activity testing. (Doc. 38-2) at 10. At the same time, a CMA medically cleared Plaintiff for full duties, but also noted that Plaintiff should be allowed "maximal prep time" to take the PAT. (Doc. 38-3) at 1. Juul subsequently informed Plaintiff at the end of April 2011that she could leave an hour early from work to go to the gym to prepare for the PAT. *Id.* at 2. Juul also set the date for the PAT on July 25, 2011. Juul reminded Plaintiff that there was still a pending removal recommendation, and that the final decision on that recommendation would be based on the upcoming PAT results. *Id.* In the interim, Plaintiff was placed on temporary disqualification status. *Id.*

Although Plaintiff admits that she was physically ready and able to take the July 25, 2011, PAT, Plaintiff injured her knees during the running portion of that PAT, thereby causing her not to complete the run. *Id.* at 3; (Doc. 47-1) at 7; (Doc. 52-2) at 2. A wet track led to Plaintiff's injury. (Doc. 38-8) at 6, depo. at 160. In fact, the next day, a physician restricted Plaintiff to sedentary work for bilateral knee sprains.[2] (Doc. 47-1) at 10.

Four people, including Juul and other supervisors, observed Plaintiff take the running test at the July 25, 2011, PAT. (Doc. 47-1) at 2, depo. at 154-155. Normally, not that many persons observe the PAT running test.[3] *Id.* at 3, depo. at 153; (Doc. 47-1) at 22, ¶ 8. The observers intimidated Plaintiff, but the intimidation did not cause her to fail the running test. (Doc. 47-1) at 2, depo. at 156.

On July 28, 2011, Knox informed Plaintiff that he would be issuing a decision on the June 2010 proposed removal action, and that he was providing Plaintiff an opportunity to explain why she should not be removed based on the failure to pass the July 25, 2011, PAT. (Doc. 38-4) at 5. Plaintiff met with Knox on August 1, 2011, and stated to Knox that Army Regulation 190-156 allowed her to take a diagnostic PAT before taking the official record PAT. (Doc. 38-4) at 1, ¶ 4. Knox replied that under Army Regulation 190-56, Appendix D-6, Plaintiff had 90 days to pass the PAT following recovery from a temporary medical condition. *Id.*

Knox met with Plaintiff again on August 5, 2011, at which time Plaintiff produced documentation and further argument that she should not be removed from her position. *Id.* at 1-

---

[2] Plaintiff's physician did not release her to work without any limitations until April 2012. (Doc. 47-1) at 15.

[3] Juul, however, testified at his deposition that a minimum of four people were required to attend a PAT. (Doc. 52-5) at 2, depo. at 14. Knox also testified at his deposition that it was not unusual to have three supervisors present. (Doc. 52-1) at 2, depo. at 28. Timothy Brown attested that it is not unusual for more than two people to be present at a PAT. (Doc. 52-4) at 1, ¶ 2.

2, ¶ 5.  Knox did not learn of Plaintiff's EEO activities until he met with Plaintiff in August 2011.  *Id.* at 3, ¶ 11.

On August 10, 2011, Knox spoke with a Subject Matter Expert (SME) for Army Regulation 190-56 regarding its application to Plaintiff's situation.  *Id.* at 2, ¶ 6.  The SME confirmed that a "guard being returned from a temporary medical restriction after being cleared by a competent medical authority had 90 days to adequately meet the standard established by AR 190-56 relative to the PAT in accordance with paragraph D-6 of Appendix D of that regulation."  (Doc. 38-4) at 6.  Moreover, the SME confirmed that diagnostic PATs only apply to new security guards.  (Doc. 38-4) at 2, ¶ 6.  The next day, Knox issued a decision to remove Plaintiff from her position for failure to pass the February 2010 PAT, the April 2010 PAT, and the July 2011 PAT.  *Id*. at ¶ 8 and at 7-8.  The removal decision was effective August 17, 2011.  *Id.* at 7.

Plaintiff appealed Knox's decision to the Merit Systems Protection Board (MSPB), which affirmed the removal action.  (Doc. 38-5) at 1-2; (Doc. 38-6) at 1-5.  The Equal Employment Opportunity Commission also concurred with the MSPB.  (Doc. 38-7) at 1-2.  Thereafter, Plaintiff was allowed to file this lawsuit.[4]  *Id.* at 2.

3. *Male Security Guards*

  a. *Gilbert Moreno*

In January 2013, a CMA medically cleared Moreno after undergoing knee surgery.  (Doc. 52-3) at 3; (Doc. 47-1) at 19-20, ¶ 5.  The CMA subsequently placed Moreno on another medical restriction for a week in March 2013, and CMAs later placed Moreno on a medical restriction on April 25, 2013.  (Doc. 52-3) at 4-5.  Those restrictions involved chest pain issues.  (Doc. 38-10)

---

[4] Title VII gives federal employees the right to a *de novo* review of their Title VII claims.  *See Blondo v. Bailar*, 548 F.2d 301, 304 (10th Cir. 1977).  Hence, the Court will not rely on the MSPB or EEOC decisions in addressing Plaintiff's Title VII claims.

at 2, ¶ 13.  Although Moreno had a history of a heart murmur, the heart murmur never prevented Moreno from performing his duties.  (Doc. 47-1) at 20, ¶ 5.  CMAs lifted the April 2013 medical restriction on May 2, 2013.  (Doc. 52-3) at 6.  Moreno then resigned from his job in June 2013.  (Doc. 47-1) at 19, ¶ 3.  Moreno was not asked to take the PAT from January 2013 to June 2013.  *Id.* at 20, ¶ 6.  Additionally, neither Juul nor Knox supervised Moreno in 2013.  *See* (Doc. 38-1) at 1, ¶ 2 (Juul left position as FBR guard supervisor in 2011); (Doc. 52-3) at 3-6 (Moreno's 2013 medical clearances and restrictions signed by James O. Winbush, Jr. or James G. Bodine, Jr., not Knox).

### b. *Jessie Jones*

Plaintiff's supervisors gave Jones and other male security guards 8 to 11 months to take their first record PATs.  (Doc. 47-1) at 22, ¶ 6.  Jones observed that, unlike other security guards, Plaintiff's supervisors had a negative attitude toward her and even ostracized Plaintiff.  (Doc. 47-1) at 21-22, ¶ 5.

### 4. *The Complaint for Employment Discrimination and Retaliation (Complaint) (Doc. 1)*

In Count I of the Complaint, Plaintiff brings a Title VII claim for gender discrimination.  Plaintiff maintains that male security guards were treated differently than her with respect to the PATs.  In Count II of the Complaint, Plaintiff brings a Title VII claim for retaliation.  Plaintiff maintains that Defendant terminated her employment in retaliation for her EEO activities.

Defendant now moves for summary judgment on both Counts I and II.  Plaintiff contests the Motion for Summary Judgment in its entirety.

*B. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[5] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C. Discussion*

   *1. Count I:  Title VII Gender Discrimination*

When a plaintiff alleges gender discrimination based on circumstantial evidence, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See, e.g., E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a *prima facie* case of gender discrimination. *Id.* "Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory

---

[5]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

reason for the adverse action.  If the employer does so, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual."  *Id.* (citation omitted).

### a. Plaintiff's Prima Facie Case of Gender Discrimination

For a plaintiff to prove a *prima facie* case of gender discrimination, the plaintiff must show that "she (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged despite her qualifications; and (4) was terminated 'under circumstances which give rise to an inference of unlawful discrimination.'"  *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (citation omitted).  Defendant contends that Plaintiff has not produced sufficient evidence to meet the second element of her *prima facie* case.  Defendant specifically argues that because Plaintiff could not pass the 2010 and 2011 PATs, a condition of her employment as a security guard, Plaintiff was not qualified for her position at the time Defendant removed her from that position.  Failure to pass the 2010 and 2011 PATs also constitutes Defendant's legitimate, nondiscriminatory explanation for termination of Plaintiff's employment.

> The Tenth Circuit has held that
>
> [w]hen an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the *prima facie* stage, it cannot also be used to defeat the employee's *prima facie* case.  To hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual.

*E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).  Applying the Tenth Circuit's rationale here, Defendant's lack of disqualification argument fails at this stage of the *McDonnell Douglas* analysis.

To satisfy the *prima facie* qualification requirement, Plaintiff need only present "some credible evidence that she possesses the objective qualifications necessary to perform the job at issue." *Id.* at 1194. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff was physically able to take the July 25, 2011, PAT, and would have passed that PAT had the track been dry and she had not injured her knees. Moreover, Plaintiff has presented some credible evidence that Defendant could have relied on Army Regulation 190-56 to place her on a medical restriction for the injured knees, thereby keeping Plaintiff employed and allowing her to re-take the PAT once she was medically cleared to do so. Plaintiff has, therefore, presented sufficient evidence from which a reasonable jury could find that she possessed the objective qualifications necessary to continue her employment as lead security guard. Accordingly, Plaintiff has satisfactorily demonstrated that she meets her burden of establishing a *prima facie* case of gender discrimination.

> b. *Defendant's Legitimate, Nondiscriminatory Reason for Terminating Plaintiff's Employment*

Plaintiff concedes, for the purpose of this Motion for Summary Judgment, that Defendant proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, i.e., Plaintiff's failure to pass the 2010 and 2011 PATs. (Doc. 47) at 8.

> c. *Plaintiff's Demonstration of Pretext*

A plaintiff can demonstrate pretext in two ways: (1) a plaintiff can produce evidence of the falsity of the employer's legitimate, nondiscriminatory explanation; and (2) a plaintiff can produce evidence of differential treatment of similarly-situated employees. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007). Plaintiff argues that she can demonstrate pretext in both those ways.

### *(1) Falsity of Defendant's Explanation*

A plaintiff demonstrates the falsity of an employer's explanation by presenting evidence of "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence' and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* at 1167 (citations omitted). An employer's mistaken or unwise explanation for terminating employment does not, however, rise to the level of a false explanation. *Id.* at 1169-70. The relevant question is whether the employer honestly believed in the explanation for the termination of employment and acted in good faith upon that belief. *Id.* at 1170.

Here, Plaintiff contends that because she was injured during the July 25, 2011, PAT and, thereafter, placed on medical restrictions by her doctor, Army Regulation 190-56 provides that Defendant should have exempted her from completing the July 25, 2011, PAT and allowed her to re-test after being medically cleared to do so. Plaintiff asserts that Defendant's failure to exempt her from the July 25, 2011, PAT, as required by Army Regulation 190-56, shows the falsity of Defendant's reason for terminating her employment. Army Regulation 190-56, however, does not address a situation where an employee is injured while taking a PAT. A literal reading of Army Regulation 190-56, Plaintiff's acknowledgment that passing the PAT is a condition of employment, and the position description for lead security guard all support Knox's belief that Plaintiff's failure to pass the PAT, after having been medically cleared 90 days before attempting the PAT, afforded a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Moreover, the Army Regulation 190-56 SME verified that Plaintiff, as a current lead security guard, was not entitled to a diagnostic PAT, and that she was subject to the 90 day

period to take a record PAT.  Plaintiff has not presented any evidence that Knox did not honestly and with good faith act upon his belief that he could terminate Plaintiff's employment for failing to pass the 2010 and 2011 PATs, no matter the reason for not passing the PATs, so long as Plaintiff had been medically cleared 90 days before the scheduled PATs.  Even if a reasonable jury could find that not allowing Plaintiff to re-test after recuperating from the July 25, 2011, knee injuries was a mistaken application of Army Regulation 190-56, such a mistake is not indicative of a false explanation.

Plaintiff also contends that, contrary to her physician's recommendation after her hernia surgery, Juul required Plaintiff to take the third PAT within 90 days of being medically cleared instead of three to four months after being medically cleared.  Plaintiff, however, testified under oath that she was physically able to take the July 25, 2011, PAT and would have passed the PAT running test had the track been dry.  Moreover, the July 25, 2011, PAT was within the physician's three month recovery instruction.  Plaintiff has simply not presented any evidence that Juul did not honestly and with good faith act upon his belief that the July 25, 2011, PAT date was appropriate under Army Regulation 190-56 and pursuant to Plaintiff's physician's instruction.

In sum, Plaintiff has failed to produce evidence from which a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could infer that Knox or Juul possessed discriminatory motives.  Plaintiff has, therefore, failed to carry her burden of demonstrating that Defendant's explanation for the termination of her employment was false and thereby, pretextual in nature.

*(2) Differential Treatment of Similarly-Situated Employees*

Plaintiff next attempts to show pretext by demonstrating that Defendant treated Plaintiff differently than he treated male security guards Moreno and Jones. To be similarly-situated, the comparator employees must have had the same supervisor as the plaintiff and so were subjected to the same performance and disciplinary standards as the plaintiff. *Richardson v. Gallagher*, 553 Fed. Appx. 816, 824 (10th Cir. 2014). Also, a similarly-situated employee is one who has violated employment rules of comparable seriousness to those violated by the plaintiff. *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005). "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly-situated." *Id.* In other words, a plaintiff must show that she was similarly-situated to the comparator employees "in all relevant respects." *McGowan v, City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006). Even so, "if the employer's differential treatment of similarly-situated employees is 'trivial or accidental or explained by a nondiscriminatory motive, such treatment is insufficient to create an inference of discrimination." *Swackhammer*, 493 F.3d at 1169 (citation omitted).

*(a) Moreno*

Plaintiff asserts that Moreno was able to take the PAT from January 2013 to June 2013, and that Moreno had no issues with his heart which prevented him from taking the PAT during that time period. Contrary to Plaintiff's assertion, Moreno did not state anywhere in the record that he was able to take the PAT from January 2013 to June 2013. Instead, Moreno stated in his affidavit that he was not asked to take the PAT during that timeframe. In addition, although Moreno had a heart murmur that did not affect him physically, Plaintiff did not present any evidence to contradict the evidence that chest pains, as opposed to a heart murmur, caused

13

Moreno to be medically restricted in March and April 2013. Even if chest pains did not cause Moreno's medical restrictions, the uncontested evidence shows that CMAs, nonetheless, medically restricted Moreno in March and April 2013.[6]

Plaintiff also asserts that Moreno was not required to take the PAT from January 2013 to July 2013 even though Moreno should have taken the PAT 90 days after the CMA medically cleared him in January 2013. However, before Moreno could take the PAT within that 90 day period, a CMA placed Moreno on another medical restriction for a week in March 2013. After that medical restriction ended a week later, Moreno had another 90 days to take the PAT. Then, before the expiration of the second 90 day period, a CMA medically restricted Moreno on April 25, 2013. After the CMA lifted the April 2013 medical restrictions on May 2, 2013, Moreno had a third 90 day period within which to take the PAT. Moreno resigned from his job before the third 90 day period expired. Army Regulation 190-56 clearly provides that a security guard who is medically cleared has 90 days to take the PAT. Applying Army Regulation 190-56 to Moreno's circumstances in 2013, led to Moreno being able to avoid taking the PAT for a six month period.

Considering the peculiar circumstances faced by Moreno in 2013, no reasonable jury could find that Moreno violated any employment rule of comparable seriousness to that which Plaintiff violated, i.e., her failure to pass three consecutive PATs. Moreover, Plaintiff has not demonstrated that Moreno and Plaintiff shared the same supervisors. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Plaintiff was similarly-situated to Moreno "in all relevant respects."

---

[6] Defendant redacted the portions of Moreno's official medical restrictions which described his medical condition, presumably to protect Moreno's privacy rights.

*(b) Jones*

Plaintiff contends that, unlike her, Jones and other male security guards had 8 to 11 months to take their first record PAT.  Jones, however, does not indicate that he and the other male security guards had 8 to 11 months to take a record PAT after having been medically cleared to do so.  Without medical restrictions, Army Regulation 190-56 allowed Jones and the male security guards up to 12 months to prepare and take their annual PATs.  When viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could, therefore, not find that Jones violated any employment rule of comparable seriousness to that which Plaintiff violated.  Hence, no reasonable jury could find that Plaintiff was similarly-situated to Jones "in all relevant respects."

*(c) Large Number of Supervisors at the July 25, 2011, PAT*

Plaintiff further argues that Defendant subjected her to differential treatment when a large number of supervisors attended the July 25, 2011, PAT.  The Court observes that Army Regulation 190-56 does not provide for a set number of personnel or supervisors to attend a PAT.  Notably, Plaintiff testified at her deposition that the number of people at the July 25, 2011, PAT did not cause her to fail the PAT.  Plaintiff has also not presented any evidence that Knox's decision to have several supervisors present at the July 24, 2011, PAT, somehow shows the falsity of Knox's explanation for terminating Plaintiff's employment.  Thus, in viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that the presence of the supervisors, while arguably differential treatment, was not "trivial or accidental or explained by a nondiscriminatory motive."

*(d)  Negative Attitude Toward Plaintiff*

Finally, Plaintiff argues that she received differential treatment, because her supervisors had a negative attitude towards her and even ostracized her.  Unfortunately for Plaintiff, mere "[c]onclusory allegations, conjecture, or mere allegations of impartial treatment" which are not supported by facts in the record, like the ones mentioned above, are insufficient to show pretext. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1207 (10th Cir. 2004).  Furthermore, mere dislike of an employee does not support a determination of pretext or discriminatory intent.  *See, e.g., Roberts v. Randstad N. Am. Inc.*, 231 Fed. Appx. 890, 895-96 (11th Cir. 2007).  Although a reasonable jury, in viewing the evidence in the light most favorable to Plaintiff, could find that a negative attitude toward Plaintiff constituted differential treatment, a reasonable jury could not find that the differential treatment was explained by a discriminatory motive.

To summarize, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not infer a discriminatory motive from Defendant's differential treatment of Plaintiff. Hence, Plaintiff has not carried her burden of demonstrating pretext on that basis as well. Defendant is, thus, entitled to summary judgment on Plaintiff's Title VII gender discrimination claim as set forth in Count I of the Complaint.

2. *Count II:  Title VII Retaliation*

As with a Title VII gender discrimination case based on circumstantial evidence, a Title VII retaliation case based on circumstantial evidence relies on the *McDonnell Douglas* burden-shifting framework.  *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1204-06 (10th Cir. 2000).  To state a *prima facie* case of retaliation, a plaintiff must demonstrate "that (1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the

16

protected activity and the adverse employment action." *Id.* at 1205. Defendant contends that Plaintiff cannot rely on temporal proximity to establish a causal connection between her EEO activities and the termination of her employment. Plaintiff notes, however, that if close temporal proximity is lacking, she may still establish a causal connection through additional evidence, including evidence of pretext which she already presented with respect to the gender discrimination claim. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007) (can consider pretext evidence in *prima facie* stage of retaliation claim). For the reasons explained *supra*, a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could not find that Plaintiff has shown pretext. Consequently, Plaintiff has not carried her burden of demonstrating either a *prima facie* case of retaliation or pretext at the third stage of the *McDonnell Douglas* burden-shifting framework. Defendant is, therefore, entitled to summary judgment on the Title VII retaliation claim raised in Count II of the Complaint.

    IT IS ORDERED that

    1. Defendant's Motion for Summary Judgment (Doc. 37) is granted;

    2. summary judgment will be entered in favor of Defendant on Counts I and II of the Complaint; and

    3. Plaintiff's Complaint will be dismissed with prejudice, thereby terminating this case.

_____
UNITED STATES DISTRICT JUDGE